TRESPASS

LOITERING

KEYLESS ENTRY

LOITERING IN HALLS

PROXIMTY TO CRIME LOCATION

**UNITED STATES of America**

v.

**Robert SIMMONS, Defendant.**

**No. 08 CR 1280(SAS).**

United States District Court,
S.D. New York.

April 16, 2012.

Richard B. Lind, Esq., New York, NY, for the Defendant.

Michael D. Maimin, Assistant United States Attorney, New York, NY, for the Government.

## *OPINION AND ORDER*

SHIRA A. SCHEINDLIN, District Judge.

## I. INTRODUCTION

Following a bench trial on stipulated facts, defendant Robert Simmons was convicted of one count of being a convicted felon in possession of a weapon and ammunition. He was sentenced to a mandatory minimum term of 180 months in custody. On appeal, the Second Circuit affirmed this Court's denial of defendant's motion to suppress certain statements, but reversed this Court's denial of defendant's motion to suppress the seizure of the gun and ammunition. The Second Circuit remanded the case for "further proceedings consistent with this opinion." [1]

The Government asks the Court to resolve defendant's motion to suppress on the grounds it raised in its initial opposition to said motion, which were not addressed by the Court, and on additional grounds now raised for the first time. The parties have made voluminous submissions in support of their respective positions.[2] Although the Court heard extensive oral argument on the issues presented, no additional evidence was taken as the parties agreed that the record of the prior sup-

1. *United States v. Simmons*, 661 F.3d 151, 159 (2d Cir.2011). The Court's Mandate, issued on December 12, 2011, uses slightly different language: "the order of the District Court is AFFIRMED in part, REVERSED in part, and REMANDED in accordance with the opinion of this Court."

2. *See* Memorandum of the United States of America on Remand ("Gov't Mem.") (docket # 45); Brief for Defendant Robert Simmons on Remand (docket # 48); Reply Memorandum of the United States of America on Remand (docket # 49). *See also* 1/11/12 Letter from Richard B. Lind, defendant's counsel, to the Court; 1/17/12 Letter from Assistant United States Attorney Michael D. Maimin to the Court; 1/18/12 Letter from Lind to the Court.

pression hearing is sufficient to resolve all factual issues.

In opposition to defendant's motion, the Government initially argued that: defendant's roommate consented to entry by the police into the apartment he shared with Simmons; the seized gun was in "plain view;" and the police were permitted to enter Simmons' bedroom as part of a protective sweep, thereby triggering the so-called public safety exception to the Fourth Amendment's warrant requirement.[3] After holding a two-day evidentiary hearing, I concluded that the roommate did not have the authority to authorize a search of defendant's bedroom but that the public safety exception permitted the police officers to enter the bedroom and seize the gun. Because I found that the public safety exception applied, I did not reach the issue of whether the gun was in "plain view." The Court of Appeals for the Second Circuit (the "appellate court") has now held that the public safety exception did not permit the police to enter defendant's bedroom. As a result, I must now determine whether there are other grounds for permitting the warrantless search of defendant's bedroom.

The parties agree that the Court should now decide the "plain view" question.[4] However, the Government now argues that there are two additional legal grounds on which the Court should deny the motion to suppress—defendant's implicit consent to the search of his bedroom and the inevitable discovery doctrine. The defendant, in turn, argues that the Court may not consider any legal theory not raised in opposition to the original motion to suppress, claiming that the Government has waived any such arguments. I disagree. "If the record reveals matters which indicate that the evidence was lawfully obtained," then this Court is permitted to consider that evidence in deciding the pending motion to suppress.[5]

## II. RELEVANT FACTS

On the night of November 10, 2008, the police entered Simmons' apartment at the request of his roommate who had called the police and reported that there was a man with a gun at his apartment located at 920 Trinity Avenue.[6] When the police arrived, the roommate explained that several days earlier, in the midst of a dispute with Simmons, Simmons brandished a shiny silver handgun.[7] After entering the apartment, the police walked down the hallway toward Simmons' bedroom.[8] The police testified that the bedroom door was open

3. "Where the public safety exception applies, a defendant's statement—and the physical evidence recovered as a result of that statement—may be admitted into evidence at trial." *United States v. Estrada,* 430 F.3d 606, 610 (2d Cir.2005) (citing *New York v. Quarles,* 467 U.S. 649, 657–60 & n. 9, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984)).

4. *See* 1/11/12 Lind Letter; 1/17/12 Maimin Letter.

5. *United States v. Rabb,* 752 F.2d 1320, 1323 (9th Cir.1984). *Cf. In re Terrorist Bombings of U.S. Embassies in East Africa,* 552 F.3d 177, 196–97 (2d Cir.2008) (permitting courts to consider *evidence* on motion to suppress which the Government brought to its attention only after the close of the suppression hearing). I conclude that if the Court may consider new *evidence* it surely can consider a new legal *theory* based on the evidence that was before the Court at the time of the suppression hearing. *Cf. Estrada,* 430 F.3d at 609–10 (holding that the Court of Appeals "may affirm the denial of the suppression motion on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely") (quotation marks and citation omitted).

6. *See* 4/14/09 Transcript of Suppression Hearing at 6–7, 54–55.

7. *See id.* at 8, 55.

8. *See id.* at 11–13, 57.

and, therefore, the bedroom was visible from the hallway.[9] Because the bedroom was dark, one of the officers used his flashlight to look into the bedroom as he announced his presence.[10] That officer testified that he saw Simmons on his bed and a shiny object located on a table next to the bed, which he believed was the gun described by the roommate.[11] At that point, Simmons rose from his bed and stepped into the hall. The police questioned him and Simmons admitted that there was a gun in his bedroom.[12] Then, the police entered the bedroom and seized the gun and ammunition from the table by Simmons' bed.[13] In his testimony, Simmons admitted that in response to the police questioning in the hallway, he stated: "Yes, I do [have a gun] in my room. My mother gave me the gun to turn [over to] the church. It is in the room on the chair by my bed under the papers." [14] On cross-examination, Simmons admitted that he lied when he stated that the gun belonged to his mother.[15] However, he claimed that the police could not have seen the gun from the hallway because it was on a chair under a newspaper.[16]

## III. DISCUSSION

### A. Plain View

On appeal, the appellate court noted that "[t]he district court did not make a finding or credibility determination to resolve the conflicting assertions about whether the gun was in plain view." [17] I now do so. I credit the testimony of Officer Mangual that he saw a shiny object on a night table next to Simmons' bed-which he believed to be the gun described by the roommate—when he shone his flashlight into the bedroom. When an officer sees an incriminating object in plain view, he may seize the object without a warrant.[18] Here, the officers were lawfully in the apartment with the consent of the roommate. The incriminating nature of a gun is immediately apparent. In addition, Simmons himself confirmed that the gun was in his bedroom near the bed. The bedroom door was open and the gun was lying just a few feet from where the officers stood. No search was needed to retrieve the gun as Simmons already told the officers of its location. For all of these reasons, no warrant was required as the

9. *See id.* at 14–15, 57–58.

10. *See id.* at 12, 14–15, 58–59

11. *See id.* at 14–15, 60.

12. *See id.* at 15–16, 47–48, 61,

13. *See id.* at 17, 63.

14. 9/18/09 Transcript of Suppression Hearing at 23–24.

15. *See id.* at 28, 47.

16. *See id.* at 18–19. In two prison conversations, Simmons claimed that the police officers could not see the gun because the bedroom was "dark" and the gun was blocked by a "plastic nightstand." *Id.* at 44–45, 82–83.

17. *Simmons,* 661 F.3d at 154 n. 1.

18. *See Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) ("Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating nature is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.") (citing *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) and *Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). *See also United States v. Scopo,* 19 F.3d 777, 782 (2d Cir.1994) ("The 'plain view' exception to the [F]ourth [A]mendment warrant requirement 'authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity.' ") (quoting *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983)).

gun was in plain view and it was permissible for the officers to seize it.

### B. Implied Consent

"There is no Fourth Amendment violation where an individual voluntarily consents to a search." [19] Because I cannot explain or justify defendant's consent any better than Judge Ralph Winter did in his dissenting opinion on appeal, I therefore quote his words and adopt them as my own:

> [Defendant's] statements constituted implied consent to the officer's entering his bedroom and securing the gun. Informing the police of the precise but concealed location of the gun—under papers and on a particular chair—had no purpose other than to facilitate the immediate seizure of the weapon. Certainly, [defendant] was not simply being helpful to the officers in any putative obtaining of a warrant .... [A] defendant's directions to a firearm amounts to, or may be found to amount to, implied consent, at least for the limited purpose of retrieving the gun.[20]

It is noteworthy that Simmons volunteered the location of the gun without being asked. The question he was asked was "Do you have a gun in this apartment." His response was, "Yes, I do, in my room .... It is in the room on the chair by my bed under the papers." [21]

In the majority opinion, Judge Barrington Parker addressed the issue of implied consent in a footnote. He began by noting that consent to a search must be voluntary and that the Government has the burden of proving, by a preponderance of the evidence, that Simmons voluntarily consented to the search. In making this determination, the district court must consider the totality of the circumstances. Judge Parker then noted that this Court did not make a finding on this issue. He then stated, "I do not believe the record can support a finding of express or implied consent." [22] With the greatest respect, this statement is clearly *dicta.* The issue of express or implied consent was not before the appellate court and a finding with regard thereto was not necessary to the resolution of the appeal. Moreover, the Government notes that Judge Parker spoke in the first person in this footnote ("I do not believe ....") whereas he had otherwise used "we" throughout the rest of the opinion. It is the role of the trial court, in the first instance, to find the facts, having observed the witnesses and assessed their testimony. Under all the facts and circumstances presented at the hearing, I find that Simmons voluntarily consented to the seizure of the weapon (there was no search) as he told the police exactly where the weapon was located. Accordingly, because defendant consented to the seizure of the weapon, his motion to suppress the gun and the ammunition must be denied.

### C. Inevitable Discovery

Under the inevitable discovery doctrine, "evidence that was illegally obtained will not be suppressed 'if the [G]overnment can prove that the evidence would have been obtained inevitably' if there had been no statutory or constitutional violation." [23]

19. *Simmons,* 661 F.3d at 159 (Winter, J., dissenting) (citation and footnote omitted).

20. *Id.* at 161 (citing *United States v. Reynolds,* 646 F.3d 63 (1st Cir.2011) (footnote omitted)).

21. 9/18/09 Tr. at 23–24.

22. *Id.* at 158.

23. *United States v. Roberts,* 852 F.2d 671, 675–76 (2d Cir.1988) (quoting *Nix v. Williams,* 467 U.S. 431, 447, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). *Accord United States v. Heath,* 455 F.3d 52, 55 (2d Cir.2006) ("Would the disputed evidence inevitably have been found through legal means 'but for' the constitution violation? If the answer is 'yes,' the evidence seized will not be exclud-

The burden of proof is on the Government which must show that "a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the [G]overnment's favor." [24]

The question here is whether the police would inevitably have found Simmons' gun had they not entered his bedroom before obtaining a warrant.[25] The answer here is undoubtedly yes. *First,* there is no question that the police could have established, to the satisfaction of a neutral magistrate, that they had probable cause to believe that a gun would be found in the bedroom as Simmons himself told the officers that the gun was on a chair in his bedroom. *Second,* there is no doubt that the gun would still be in place when the police obtained a warrant to search the bedroom. The police were lawfully in the apartment and would have remained there until the warrant was obtained. *Finally,* if they had not entered the bedroom when they did, there is no question that they would have sought a warrant to retrieve the gun. After Simmons admitted having a gun, which provided the probable cause for his arrest, the police would have sought permission to seize the gun in the location he identified and would not have left the evidence behind. Moreover, after placing defendant under arrest, the police would have entered the bedroom so that the defendant could get dressed. Thus, the inevitable discovery doctrine provides yet another ground on which to deny defendant's motion to suppress.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to suppress the gun and ammunition seized from his bedroom is again denied. As a result, the Court's guilty verdict stands. The Clerk of the Court is directed to close this motion (Docket Entry # 7).

SO ORDERED.

ed."); *United States v. Eng,* 997 F.2d 987, 990 (2d Cir.1993) (inevitable discovery doctrine "requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred").

