PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/06/98
THOMAS  K. KAHN
CLERK

No. 96-8717

D. C. Docket No. 1:95-CR-493

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRY LEWIS BURSTON,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia

**(November 6, 1998)**

Before TJOFLAT, BIRCH and MARCUS*, Circuit Judges.

---

*Honorable Stanley Marcus was a U.S. District Judge for the Southern District of Florida, sitting
by designation as a member of this panel, when this appeal was argued and taken under
submission.  On November 24, 1997, he took the oath of office as a United States Circuit Judge
of the Eleventh Circuit.

TJOFLAT, Circuit Judge:

Following a jury trial in the United States District Court for the Northern District of

Georgia, Terry Lewis Burston was convicted of one count of postal robbery, 18 U.S.C. § 2114

(1994),[1] and one count of bank robbery, 18 U.S.C. § 2113(a) (1994).[2]  He appeals, contending

that the evidence was insufficient to convict him and challenging the district court's denial of

motions to suppress certain evidence and its limitation of the cross-examination of one of the

prosecution's witnesses.  We affirm.


I.

At trial, the Government presented witnesses who testified as follows: A person

approached the service counter at a United States post office in Atlanta (the "West End post

office") on August 16, 1995, showed the clerk a robbery note, and then gave the clerk a bag and

instructed her to "[p]ut the money in the bag. . . . Hurry up, all of it."  The clerk then placed an

unidentified amount of money in the bag;[3] the robber took the bag and fled the premises.  The

robber was described by eyewitnesses as an African-American male wearing a baseball cap and

---

[1] Neither the indictment nor the judgment states which subsection(s) of § 2114 Burston was charged with violating.  The facts (and the briefs) suggest that the charge was based on § 2114(a), which states, "A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such . . . property of the United States, shall . . . be imprisoned not more than ten years."

[2] Section 2113(a) states, "Whoever, by force and violence, or by intimidation, takes . . . money or any other thing of value belonging to . . . any bank . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both."

[3] At a preliminary hearing, a postal employee testified that approximately $1,415.94 was stolen.  However, no testimony as to the amount taken was offered at trial.

sunglasses, with unusual looking hair. One of the eyewitness, a postal service employee, chased the robber out of the post office. The employee lost sight of the robber, but shortly thereafter saw him speed away from the area in a dark green Cadillac. The postal employee recorded the license plate number of the vehicle; it was registered to Burston. The employee later identified Burston as the person who had robbed the post office.

About two months later, an African-American male wearing a baseball cap and sunglasses, with unusual looking hair, robbed an Atlanta bank. A few hours after the bank robbery, Burston gave an acquaintance of his, Jacquelita Foster, a plastic bag and asked her to keep it. Soon thereafter, postal inspectors searched Ms. Foster's residence and found the bag. The bag contained a baseball cap, sunglasses, and a wig. Bank employees who were present during the robbery identified these items as the ones worn by the robber. Postal inspectors also found, in the trunk of Burston's car, a pair of tennis shoes and a shirt that bank employees identified as being similar to those worn by the robber. According to a bank employee, Burston's build was similar to that of the robber.

The Government also presented the testimony of one of Burston's accomplices, Garland Wilson. Wilson testified that Burston told him that he had robbed the West End post office.[4] Wilson further testified that he and Burston had "cased" the bank a few days before the robbery, but that he refused to rob the bank with Burston. Wilson testified that on the evening following the bank robbery, Burston was carrying substantial sums of money and told Wilson that he had "hit" the bank. He also testified that Burston took him to Ms. Foster's residence and showed

[4] Specifically, Wilson stated that as he and Burston were driving past the West End post office, "[Burston] told me, he said, that's the Post Office he had, he going to court for. And that's the one he had robbed."

3

him the outfit that he had worn during the robbery. Finally, Wilson was shown a photograph (taken by bank security cameras) of the person who robbed the bank; Wilson identified the robber as Burston.

In cross-examining Wilson, Burston brought out that Wilson had a prior felony conviction, that he had spent time in jail, that he was facing charges for possession of crack cocaine, that he had a crack cocaine addiction that affected his memory, and that he was testifying under a grant of use immunity.

II.

Burston raises four claims on appeal: (1) that there was insufficient evidence to convict him of postal robbery, primarily on the ground that the Government did not sufficiently establish that the money stolen at the post office was money belonging to the federal government; (2) that there was insufficient evidence to convict him of bank robbery; (3) that evidence taken from the trunk of his car should have been suppressed; and (4) that the district court abused its discretion by not allowing him to ask more questions regarding Garland Wilson's criminal history.

A.

Burston contends that the Government has produced insufficient evidence to convict him of postal robbery. We review the sufficiency of the evidence de novo, but we view all facts and

4

make all reasonable inferences in favor of the Government.[5]  See United States v. Miller, 71 F.3d 813, 815-16 (11th Cir. 1996).  The test for whether the evidence is "sufficient" is whether a reasonable factfinder could conclude that the defendant was guilty beyond a reasonable doubt.  See United States v. Sepulveda, 115 F.3d 882, 888 (11th Cir. 1997).  The evidence in this case meets this standard – the Government presented an eyewitness who identified Burston as the robber (and identified a car registered to Burston as the one in which the robber fled) and another witness who testified that Burston confessed to robbing the post office.[6]  The Government also presented evidence linking Burston to another robbery in which the perpetrator was wearing a disguise similar to that used in the postal robbery.  Presented with this evidence, a reasonable factfinder could conclude that Burston was guilty beyond a reasonable doubt.

Burston, however, argues that this evidence is insufficient in light of the Government's failure to establish that the funds taken at the post office were the property of the United States.  He points out that the postal clerk never testified that the money she gave to the robber was taken from her post office drawer, and that no one testified that a certain sum of money was missing from the post office after the robbery.  We find this argument unpersuasive.  Although the taking of property of the United States is a required element of proof for a conviction under 18 U.S.C. §

[5] There is a dispute between the parties as to whether Burston renewed his Fed. R. Crim. P. 29 motion at the close of the evidence, thus properly preserving his challenges to the sufficiency of the evidence.  If Burston did not renew the motion, we would reverse on the ground of insufficiency of the evidence "only to prevent a manifest miscarriage of justice." United States v. Hamblin, 911 F.2d 551, 556-57 (11th Cir. 1990).  We hold, however, that even if the motion were properly renewed, the evidence was sufficient to uphold the convictions.  We therefore do not need to decide this dispute.

[6] The testimony by Garland Wilson on this point, see supra note ___, could reasonably be understood as testifying to a confession.

5

2114(a), it may, like any other element of a crime, be inferred from other evidence. See United States v. Key, 76 F.3d 350, 353-54 (11th Cir. 1996) (holding in a bank fraud case that a jury could reasonably infer the existence of the jurisdictional requirement that the targeted bank was federally insured). The evidence presented in this case – that a postal clerk, standing at a postal counter, put money into bag given to her by a robber – is sufficient for a reasonable factfinder to conclude that the money was the property of the United States.[7] We therefore conclude that the evidence is sufficient to sustain Burston's conviction for postal robbery.

B.

Burston also contends that the Government presented insufficient evidence to sustain his conviction for bank robbery, 18 U.S.C. § 2113. Applying the standard set forth in Sepulveda, 115 F.3d at 888 – whether a reasonable factfinder could conclude that the defendant was guilty beyond a reasonable doubt – we again find that the evidence was sufficient. The Government presented evidence that, immediately after the bank robbery, Burston was in possession of the disguise used at the robbery. The Government presented testimony from a witness who claimed that he had been asked by Burston to participate in the bank robbery, and that Burston later told him that he had "hit" the bank. The Government also showed the jury the videotape from the bank's security cameras, giving the jury the opportunity to decide if the person shown on the

_____

[7] Burston also makes the argument that the Government failed to establish that money belonging to the United States Postal Service is "property of the United States." The frivolousness of the argument is aptly demonstrated by Garcia v. United States, 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984), in which the Supreme Court split 6-3 over the question of whether, given the statute's clear focus on postal crimes, section 2114's reference to "property of the United States" was intended to apply to anything other than property of the United States Postal Service.

cameras could have been Burston. Viewing this evidence in the light most favorable to the Government, we hold that it was sufficient to sustain the bank robbery conviction.

C.

The evidence used at trial against Burston included a pair of tennis shoes and a shirt, both found in the trunk of his car, that were identified as being similar to those worn by the robber in the bank robbery. These items were discovered by the Government pursuant to a search warrant obtained by postal inspector Edwin Jeter. Burston moved twice prior to trial to suppress this evidence; both motions were denied. Burston appeals these denials.

The search arose largely out of Jeter's questioning of Garland Wilson. Wilson was being questioned in relation to recent postal robberies, and eventually admitted involvement in the robbery of an Atlanta post office (other than the West End post office). During the questioning, Wilson stated that he had seen Burston place a pistol in the trunk of his car on the day after the bank robbery. He also stated that Burston had said that he was going to rob the bank, and that he had seen Burston the night after the bank robbery with a wig and money. Unknown to Wilson, Jeter had independent knowledge that the bank had been robbed by someone wearing a wig. Jeter also knew that Burston was suspected of having robbed the West End post office while wearing a disguise similar to that used in the bank robbery. Jeter placed all of this information in an affidavit, along with the caveat that Wilson was a convicted felon. Based on this affidavit, the magistrate judge found that Jeter had probable cause to search Burston's car for the gun, the disguise used in the robberies, the money taken in the robberies, a robbery note, and a brown plastic bag.

7

Burston claims that the affidavit omitted certain material information about Wilson that, if known, would have prevented a finding of probable cause. Specifically, Burston points out that the affidavit did not mention the following: (1) Wilson, when first approached by the postal inspectors, gave them a false name; (2) Wilson claimed that Burston was paying him to move his car, a claim that turned out to be false;[8] (3) Wilson lied to the postal inspectors about how he arrived at the courthouse (where he was approached for questioning) – he claimed that he had taken a bus, when he had in fact been driven there by Burston; and (4) although the affidavit mentioned that Wilson was a convicted felon, it did not specify the number and nature of his felony convictions.

To attack the veracity of a warrant affidavit, a defendant must make a preliminary showing that the affiant made intentional misstatements or omissions (or made misstatements with a reckless disregard for their truthfulness) that were essential to the finding of probable cause. See Madiwale v. Savaiko, 117 F.3d 1321, 1326-27 (11th Cir. 1997); United States v. Cross, 928 F.2d 1030, 1040 (11th Cir. 1991). Once the defendant makes such a showing, he is entitled to an evidentiary hearing on the matter; if he prevails at the hearing, the search warrant

---

[8] Wilson had accompanied Burston to the Atlanta Municipal Court, where Burston was appearing in connection with state charges filed against him for the robbery of the West End Post Office. Wilson was first approached by postal inspectors as he was leaving the courthouse and getting into Burston's car. Wilson claimed that Burston had paid him to take the car away, but the inspectors later discovered that Wilson was not carrying any money.

8

is to be voided and the fruits of the search must be excluded.[9]  See Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

Burston did not make the necessary showing to obtain an evidentiary hearing.  The points that Burston raises all attack the general credibility of Garland Wilson.  Wilson's credibility in the context of this affidavit, however, was not based on a general reputation for honesty.  Rather, it was based on independent corroboration of certain key facts (e.g., the bank robbery), Wilson's close relationship with Burston, and the self-inculpating nature of some of Wilson's testimony.  None of the omissions to which Burston points calls these grounds of credibility into question.  Cf. United States v. Ofshe, 817 F.2d 1508, 1513 (11th Cir. 1987) (holding that omission of informant's criminal convictions and incarceration did not negate probable cause where informant had personal knowledge and made self-inculpating statements); United States v. Haimowitz, 706 F.2d 1546, 1555-56 (11th Cir. 1983) (holding that omission of information indicating informant's unreliability did not negate probable cause where the informant had personal knowledge and some of his statements had independent corroboration).  The district court thus correctly denied Burston an evidentiary hearing at which to attack the affidavit upon which the search warrant was based.

Given the validity of the affidavit, Jeter had probable cause to search Burston's automobile.  The search warrant was thus supported by probable cause, and the items obtained

---

[9] As noted previously, Burston's motions were motions to suppress, not motions for an evidentiary hearing.  The motions, however, contained requests for an evidentiary hearing as contemplated by Franks v. Delaware.  In essence, the motions were making alternative claims: (1) The affidavit was invalid due to material omissions (and thus an evidentiary hearing was required); (2) even if it was valid, it still did not provide probable cause to support the search warrant (and thus the evidence obtained pursuant thereto should be suppressed).

during that search were properly admitted into evidence. We therefore affirm the district court's denials of Burston's motions to suppress.

D.

At trial, Burston sought to impeach the credibility of Garland Wilson by introducing evidence (via cross-examination of Wilson) that Wilson had four felony convictions – two for theft by taking, one for aggravated assault, and one for armed robbery. The district court limited Burston to evidence that Wilson had "a felony conviction," apparently on the ground that testimony as to the nature and number of Wilson's convictions lacked probative value.[10] Burston argues that this limitation constituted an abuse of discretion[11] and a violation of his Sixth Amendment right of confrontation, and that his conviction should therefore be vacated.

The admission of prior convictions as evidence to impeach the credibility of a witness is governed by Rule 609 of the Federal Rules of Evidence. Rule 609(a)(1) states, in relevant part:

---

[10] The record is woefully sparse regarding the details of the district court's decision in this matter. The decision appears to have been made in an off-the-record pretrial conference. At trial, Burston's counsel made no attempt to inquire into the nature and number of Wilson's convictions; during cross-examination, she limited her inquiry to the question, "[Y]ou've been convicted of a felony before, right?", to which Wilson responded, "Yes." At the close of the Government's case, Burston objected on the record to the court's ruling regarding prior convictions. The court stated that "none of those convictions add anything on the issue of credibility," and overruled the objection.

The Government implicitly concedes (by not raising the issue) that the district court did in fact exclude evidence of the nature and number of felony convictions and that Burston properly preserved his objection to this exclusion.

[11] Evidentiary rulings are reviewed for an abuse of discretion. See General Elec. Co. v. Joiner, – U.S. –, –, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997); United States v. Johnson, 139 F.3d 1359, 1365 (11th Cir. 1998).

10

For the purpose of attacking the credibility of a witness, . . . evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . . .

Fed. R. Evid. 609(a)(1). Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

We thus face a three-fold inquiry in resolving Burston's claim. First, we must determine whether evidence that Wilson had "a felony conviction," standing alone, was sufficient to satisfy Rule 609's requirement that "evidence that a witness other than an accused has been convicted of a crime shall be admitted." Second, if it was not sufficient, we must determine whether evidence of the nature and number of those convictions was nevertheless properly excluded under Rule 403. Finally, if the evidence was improperly excluded, we must determine whether this error necessitates reversal.

1.

Rule 609 requires that evidence of prior convictions of a non-defendant witness be admitted if (1) the convictions are for crimes punishable by death or imprisonment in excess of one year, (2) the convictions are less than ten years old, and (3) the evidence is being used to

11

attack the witness' credibility.[12] See Fed. R. Evid. 609(a)-(b). The Government concedes that these requirements are met for all four of Wilson's convictions that Burston sought to introduce into evidence. The only question on appeal is whether admitting evidence that Wilson had a felony conviction, while excluding evidence of the nature and number of those convictions, meets Rule 609's requirement that evidence of prior convictions "shall be admitted."

The implicit assumption of Rule 609 is that prior felony convictions have probative value.[13] Their probative value, however, necessarily varies with their nature and number. See United States v. Cathey, 591 F.2d 268, 276 (5th Cir. 1979) ("The probative value of a prior conviction is a function of at least two factors, the nature of the past crime and the remoteness of the conviction."). Evidence of a murder conviction says something far different about a witness' credibility than evidence of a conviction for a minor drug offense, although both may constitute a prior felony conviction. Furthermore, evidence of fifteen murder convictions says something different about a witness' credibility than evidence of only one such conviction. We are not certain what evidence of two convictions for theft by taking, one conviction for armed robbery, and one conviction for aggravated assault says about Garland Wilson's credibility, but we are certain that the jury should have been given the opportunity to make that decision.

Our case law supports this reading of Rule 609(a)(1). We have suggested, in the context of claims that the district court admitted too much evidence relating to prior convictions, that

---

[12] The rule also requires, by incorporating Rule 403 by reference, that the probative value of the evidence not be substantially outweighed by the prejudice, confusion, or delay created by admission of the evidence. We discuss this requirement in part II.D.2, infra.

[13] The definition of which crimes are admissible under Rule 609, namely, crimes "punishable by death or imprisonment in excess of one year," mirrors the traditional definition of a felony. See Fed. R. Evid. 609 advisory committee's note.

12

Rule 609(a)(1) requires the trial court to admit evidence of the nature and date of each conviction. See United States v. Tumblin, 551 F.2d 1001, 1004 (5th Cir. 1977);[14] see also United States v. Bray, 445 F.2d 178, 182 (5th Cir. 1971) (reaching the same conclusion regarding admissible evidence relating to prior convictions, prior to the enactment of Rule 609); United States v. Tucker, 409 F.2d 1291, 1294 n.1 (5th Cir. 1969) (same). Other circuits considering this issue have also concluded that Rule 609(a)(1) requires admission of the number and nature of prior convictions. See Doe v. Sullivan County, 956 F.2d 545, 551 (6th Cir. 1992); United States v. Guerue, 875 F.2d 189, 190 (8th Cir. 1989); see also United States v. Baylor, 97 F.3d 542, 544-45 (D.C. Cir. 1996) (suggesting same interpretation in the context of a claim that too much prior conviction evidence was admitted); United States v. Albers, 93 F.3d 1469, 1479-80 (10th Cir. 1996) (same); United States v. Robinson, 8 F.3d 398, 409 (7th Cir. 1993) (same). See generally 28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6134, at 221-27 (1993) (examining alternative approaches to Rule 609(a)(1) and concluding that the best approach is to admit evidence of the number, nature, time, place of, and punishment for each conviction).

We therefore conclude that Rule 609(a)(1) requires a district court to admit evidence of the nature and number of a non-defendant witness' prior felony convictions.

2.

---

[14] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Evidence that is otherwise admissible under Rule 609(a)(1) is to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403 (incorporated by reference in Rule 609(a)(1)). The only reason given by the district court for excluding the evidence of the nature and number of Wilson's prior convictions was that they lacked probative value. As noted in part II.D.1, supra, however, the implicit assumption of Rule 609 is that prior convictions have probative value, and that probative value is likely to vary depending on the number and type of convictions. Furthermore, the district court made no finding, and we see no basis for a finding, that evidence of the nature and number of Wilson's convictions would have created a substantial danger of prejudice, confusion, or delay. We therefore conclude that the district court abused its discretion by excluding evidence of the nature and number of Wilson's convictions.

3.

Having concluded that the district court erred by excluding evidence of the nature and number of Wilson's convictions, we must now determine the effect of that error. Erroneous evidentiary rulings will not result in reversal if they are "harmless," meaning that the party asserting error has not shown prejudice to a substantial right. See Judd v. Rodman, 105 F.3d 1339, 1341 (11th Cir. 1997); United States v. Lang, 904 F.2d 618, 627 n.15 (11th Cir. 1990). In the context of Rule 609, error is harmless if the witness' credibility was sufficiently impeached by other evidence, or if the Government's case was strong enough to support a conviction even

14

apart from the witness' testimony.  See United States v. Georgalis, 631 F.2d 1199, 1203-04 (5th Cir. Unit B 1980); Gibson v. United States, 575 F.2d 556, 559 (5th Cir. 1978).

In this case, Burston was permitted to present substantial evidence calling into question Garland Wilson's credibility.  He presented evidence that Wilson had a criminal record, that he had lied to postal inspectors about a variety of matters, that he was a crack addict (and that this addiction affected his memory), that he was presently incarcerated and facing new criminal charges, and that he had been granted use immunity for anything he said in his testimony.  We thus conclude that the jury had sufficient evidence with which to assess Wilson's credibility, and that the marginal impact of evidence relating to the specifics of Wilson's past offenses would have been de minimis.

In addition, the Government's case was strong enough to support Burston's conviction even apart from the testimony of Garland Wilson.  As to the postal robbery, the Government had an eyewitness who identified Burston as the robber and who had seen Burston's car leaving the scene of the crime.  As to the bank robbery, the Government had evidence that Burston was in possession of the disguise used in the robbery, a videotape of the robbery that was shown to the jury, and eyewitness testimony that Burston's build resembled that of the robber.  The Government also presented evidence that the same modus operandi was used in both robberies, meaning that evidence of involvement in one provided some evidence of involvement in the other.  The testimony of Garland Wilson, while helpful, was not critical to the Government's case.

The district court's exclusion of evidence relating to the number and nature of Garland Wilson's convictions was therefore harmless error, and thus is not grounds for reversal.

15

4.

In addition to the abuse of discretion claim, Burston argues that the district court's refusal to admit evidence of the nature and number of Wilson's convictions violated his right to confrontation under the Sixth Amendment. See U.S. Const. amend. VI. The Confrontation Clause requires the admission of impeachment evidence if "a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." United States v. Garcia, 13 F.3d 1464, 1469 (11th Cir. 1994). For the reasons stated in part II.D.3, supra, in light of the extensive evidence presented to impeach Wilson's credibility, cross-examination relating to the nature and number of Wilson's convictions would have had a minimal effect on the credibility ascribed to him. We therefore find no Sixth Amendment violation.

III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.