[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 30, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12847
Non-Argument Calendar

_____

D. C. Docket No. 04-20323-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWARD ANDREW GRANA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 30, 2006)**

Before TJOFLAT, ANDERSON  and BLACK, Circuit Judges.

PER CURIAM:

Edward Grana appeals his conviction by a jury of theft of approximately

$320,000 in United States currency belonging to the Bureau of Engraving and Printing, in violation of 18 U.S.C. §§ 641 and 2. He raises two arguments on appeal. First, Grana argues that the district court abused its discretion and violated his Sixth Amendment rights by restricting his the scope of his cross-examination of government witnesses.[1] As to this argument, he takes issue with the district court's ruling that he could not reference on cross-examination recordings made by government witnesses Luis Valentin, Sergio Sanchez, and Elbin Delcid. He claims that the fact that "the witnesses made the recordings was pertinent to [their] credibility as to bias and motive to lie." Grana further argues that the district court erred by precluding him from cross-examining Valentin and Sanchez regarding Valentin's attempts to get Sanchez to engage in drug transactions. He argues that the district court erred by failing to allow him to question Sanchez as to whether he was aware that Grana intended to rent a storage unit before the theft took place.

Grana's second argument is that the district court coerced the jury into returning a verdict by releasing them on a Friday with instructions to return to continue deliberations the following Monday because it "improperly suggested that [the court] expected a verdict," unlike the Allen[2] charge given by the court the

---

[1]Grana also states, generally, that his Fifth Amendment right to a fair trial was violated by the alleged errors set forth in the first issue he raises on appeal. However, he does not explain how his Fifth Amendment rights were violated, and no such basis is apparent.

[2]Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)

previous day.   He contends that "the cumulative effect of the trial court's refusal to acknowledge [the jury's] genuine inability to reach an agreement, along with the trial court's supplemental instruction prior to releasing the jury for the weekend, improperly coerced the jury to reach their verdict."

Each argument is addressed in turn.

I.

To prove a violation of 18 U.S.C. § 641, the government has the burden to show that: (1) the defendant fraudulently appropriated money or property to his own use or the use of others; (2) the money or property belonged to the government; and (3) the defendant did so knowingly and willfully with the intent either temporarily or permanently to deprive the government of use of the money or property.  See 18 U.S.C. § 641; United States v. McRee, 7 F.3d 976, 980 (11th Cir. 1993).

The Confrontation Clause provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has determined that this provision serves to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157, 3163,

111 L.Ed.2d 666 (1990).  Included in the Confrontation Clause's guarantee is that witnesses against an accused must submit to cross-examination.  Craig, 497 U.S. at 845-46, 110 S.Ct. at 3163.  However, the Sixth Amendment right to confrontation is not absolute.  United States v. Deeb, 13 F.3d 1532, 1537 (11th Cir. 1994).  Specifically, the Confrontation Clause "guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Kentucky v. Stincer, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987) (citation omitted).  A defendant's rights under the Confrontation Clause are protected as long as "cross-examination exposes the jury to facts sufficient to evaluate the credibility of the witnesses and enables defense counsel to establish a record from which he can properly argue why the witness is less than reliable." Mills v. Singletary, 161 F.3d 1273, 1288 (11th Cir. 1998).  Once there is sufficient cross-examination to satisfy the Confrontation Clause, the district court may limit further cross-examination within its discretion.  United States v. Diaz, 26 F.3d 1533, 1539 (11th Cir. 1994).

The Confrontation Clause requires the admission of impeachment evidence if "a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." United States v. Garcia, 13 F.3d 1464, 1469 (11th Cir.1994).

4

In Diaz, we held that a district court did not violate the Confrontation Clause or abuse its discretion by prohibiting cross-examination of a government witness regarding a prior arrest and a related investigation and civil action, notwithstanding the defendants' contention that incident gave the witness motive to testify favorably for government, in part because the defendants were allowed to delve into witnesses credibility by inquiring if he had any reason to "curry favor" with the government. Diaz, 26 F.3d at 1539. We have also held that a defendant's Confrontation Clause rights were not violated by the district court's refusal to admit evidence regarding a witness' past criminal history because extensive impeachment evidence was already presented. United States v. Burston 13 F.3d 1464, 1336-37 (11th Cir. 1998).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or a hearing, offered into evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). Generally, hearsay is inadmissible. Fed.R.Evid. 802. Among the exceptions to the general rule is that the district court may allow evidence of a statement that is otherwise hearsay when the purpose is to establish the declarant's state of mind. Fed.R.Evid. 803(3).

When a party properly preserves its claim, we review the district court's evidentiary rulings for an abuse of discretion. United States v. Jiminez,

5

224 F.3d 1243, 1249 (11th Cir. 2000). We will reverse an erroneous evidentiary ruling "only if the resulting error was not harmless." United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999), corrected by 194 F.3d 1186 (11th Cir. 1999); see also Fed.R.Crim.P. 52(a) (noting that errors that do not affect substantial rights must be disregarded). An error is harmless unless "there is a reasonable likelihood that [it] affected the defendant's substantial rights." United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir.1990). We need not reverse a conviction if the evidentiary error "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." United States v. Fortenberry, 971 F.2d 717, 722 (11th Cir. 1992).

As to his Confrontation Clause argument, on cross-examination of Valentin, Grana ascertained that he had been involved in drug sales, and had cooperated with the government in an effort to get his brother out of prison early. He questioned whether Valentin and his brother concocted the story about Grana stealing the currency, and whether he was angry with Grana. Valentin stated during cross-examination that he had cooperated with the government during its investigation. Grana also ascertained that Valentin had previously lied to obtain money in connection with past drug transactions and that he had confessed these crimes to the government but had not been prosecuted. Finally, he questioned

6

whether Valentin had a record of $500 of the stolen currency that he claimed Grana gave him.

Grana also questioned Delcid about the events that he claimed to have witnessed on the date of the theft, and Delcid admitted cooperating with the government. On his cross-examination, Sanchez admitted that he had sold drugs to both Grana and Valentin. He also admitted that he was afraid of being arrested and incarcerated for his drug activity. Sanchez verified that he had cooperated with the government, but refused to speak with an investigator acting on Grana's behalf. Grana also questioned whether Sanchez believed that he could avoid jail by cooperating with the government, and Sanchez admitted that he was angry at Grana for not paying him all of the money due on a paint job.

In sum, Grana's cross-examination of these government witnesses addressed their prior drug use, motives to lie, versions of events, and cooperation with the government. See Burston 159 F.3d at 1336-37. A reasonable jury's evaluation of the witnesses' credibility would not have been significantly different had the recorded conversations or testimony about them been introduced, especially to the extent that Grana sought to introduce them to show that the witnesses cooperated with the government, as that fact was clearly established. See Garcia, 13 F.3d at 1469. The district court's limitation of the examinations by refusing to allow

evidence of the audiotapes, therefore, was not an abuse of discretion in this respect. See Diaz, 26 F.3d at 1539.

As to the hearsay issues, at trial, Grana attempted to elicit and admit into evidence testimony from Sanchez regarding statements Grana allegedly made prior to the date of the theft that he wished to obtain a storage unit. Grana argued that this evidence would tend to refute the government's claim that he wanted to rent the unit to store the stolen currency. The district court sustained the government's objection on hearsay grounds, finding that the statements were offered for their truth, and not - as Grana argued - to show "state of mind" or "intent." Grana also filed a motion in limine to introduce evidence of Valentin's "silence" on one audiotape, claiming that this undermined Valentin's credibility, but the court denied his motion on the basis that the tape was inaudible, and otherwise on hearsay grounds.

Assuming arguendo that the district court erred by failing to admit this evidence as hearsay, it was harmless in light of the evidence against Grana at trial. See Fortenberry, 971 F.2d at 722. Specifically, Valentin and Sanchez testified that Grana had confessed to stealing the currency. Valentin testified that Grana told him in detail how he obtained the currency, and that he had previously considered committing such a crime if the opportunity arose. Valentin's version of the theft,

8

as told to him by Grana, was corroborated by a government agent's version of the suspected manner of the theft. There was also testimony that security records showed that Grana exited an employee checkpoint, where he was not searched, into a public area, and re-entered through the same check point shortly thereafter on the date and around the time of the theft. Accordingly, there was ample evidence upon which the jury could have found Grana guilty of knowingly and willfully taking money that belonged to the government with the intent to deprive the government of its use, in violation of § 641. See 18 U.S.C. § 641; McRee, 7 F.3d at 980.

Based upon the foregoing, first, there was no error regarding to the district court's limitations on Grana's cross-examination of government witnesses because his cross-examination was adequate to protect his rights under the Confrontation Clause. Second, any evidentiary error alleged by Grana was harmless in light of the ample evidence supporting the jury's guilty verdict.

## II.

We determine whether a trial judge's instruction that the jury continue deliberation was coercive based upon the totality of the circumstances. Lowenfeld v. Phelps, 484 U.S. 231, 237, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988).

In United States v. Brokemond, 959 F.2d 206, 208-09 (11th Cir. 1992), we

9

reviewed a case in which the appellant conceded the validity of a modified Allen charge, but argued, as Grana does, that a subsequent instruction to the jurors given in response to their failure to agree on a verdict was coercive. See Brokemond, 959 F.2d at 208-09. In that case, the district court's supplemental instruction reminded jurors that their verdict had to be unanimous. Id. at 208. We noted that the district court's reemphasis of the unanimity requirement in the supplemental instruction "was merely a reiteration of that part of the initial charge," and did not "suggest to the jury which verdict it should return." Id. at 209. Therefore,"[v]iewing the supplemental instruction in light of the totality of the overall charge, which was correct in all respects," the supplemental instruction was not coercive. Id.

In United States v. Prosperi, 201 F.3d 1335, 1341 (11th Cir. 2000), we stated that a "brief instruction" that consisted of the court advising the jury to continue deliberations was not coercive because it did not "suggest that a particular outcome was either desired or required." Prosperi, 201 F.3d at 1341. Similarly, in Watson v. Alabama, 841 F.2d 1074, 1076 (11th Cir. 1988), we ruled that a supplemental instruction given to a jury was not coercive because that the judge's initial charge to the jury was thorough, extensive and correct, and the supplemental instruction only reemphasized the requirement of unanimity. Watson, 841 F.2d at 1076. In

10

contrast, in <u>Jenkins v. United States</u>, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965), the Supreme Court held that a trial judge's statement, in the course of his response to a jury's note that they were unable to agree on verdict, that "[y]ou have got to reach a decision in this case" was coercive. <u>Jenkins</u>, 380 U.S. at 446, 85 S.Ct. at 1060.

In the present case, in response to an initial note advising the district court that the jurors had not reached a verdict, the district court read a modified <u>Allen</u> charge, the propriety of which Grana does not dispute.

In response to the second note advising that the jurors had not yet reached a verdict, the district court advised that the jury continue deliberations for approximately 15 to 20 minutes. A third note was also received, though it is unclear exactly when that note was submitted by the jury, and it appears from the record that it might have been submitted while the jury waited on word from the district court regarding the second note. In any event, at the end of the day on a Friday, after two notes from the jury subsequent to the <u>Allen</u> charge, the district court advised the jurors that they would resume deliberations on the following Monday in an effort to reach an unanimous verdict. Specifically, the court advised that the jurors "get some rest over the weekend," and "[r]e-think [their] positions." It also stated that the jurors were "free to think about what's going on in terms of

11

[their] deliberations."

The totality of these circumstances were not inherently coercive because the district court did not "suggest that a particular outcome was either desired or required." See Prosperi, 201 F.3d at 1341. The court also did not state that the jury would be required to reach a decision. Jenkins, 380 U.S. at 446, 85 S.Ct. at 1060.

Based upon the foregoing, we affirm Grana's conviction.

**AFFIRMED.**