11-5173-cr
U.S. v. Yakovlev

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of January, two thousand thirteen.

Present:
> ROBERT A. KATZMANN,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges*,
> JED S. RAKOFF,[*]
> > *District Judge*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                    No. 11-5173-cr

DMITRIY YAKOVLEV,

> *Defendant-Appellant*,

JULIA YAKOVLEV,

> *Defendant*.

---

[*]The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

For Defendant-Appellant:        MICHAEL H. GOLD, New York, NY

For Appellee:                   JAMES D. GATTA (Amanda Hector, Peter A. Norling,
                                David C. James, *on the brief*), Assistant United States
                                Attorneys, *for* Loretta E. Lynch, United States Attorney
                                for the Eastern District of New York, Brooklyn, NY


        Appeal from the United States District Court for the Eastern District of New York (Glasser, *J.*).

        **ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

        Defendant-Appellant Dmitriy Yakovlev appeals from a judgment of conviction entered on November 28, 2011 by the United States District Court for the Eastern District of New York (Glasser, *J.*). After trial, a jury convicted Yakovlev of conspiring to commit and committing bank fraud in violation of 18 U.S.C. §§ 1344 & 1349, conspiring to use and using access devices issued to another in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), & (b)(2), conspiring to fraudulently use and fraudulently using another's identification in violation of 18 U.S.C. §§ 1028(a)(7) & (f), fraudulently using the identification of two victims in connection with their murders in violation of 18 U.S.C. § 1028(b)(3)(B), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). The district court sentenced Yakovlev to thirty years of imprisonment and ordered restitution in the amount of $432,050.74. Yakovlev now appeals, arguing that the evidence did not support his convictions, that the district court erred by permitting expert testimony concerning canine DNA comparisons, and that the district court should have excluded one victim's underwear, which Special Agents of the Federal Bureau of Investigation ("FBI") recovered from Yakovlev's basement. We assume the parties' familiarity with the relevant facts, the procedural history, and the issues presented for review.

2

On July 28, 2011, the district court denied Yakovlev's post-trial motion for a judgment of acquittal. "We review the denial of a [motion for a judgment of acquittal] *de novo*, viewing the evidence in the light most favorable to the government." *United States v. Pizzonia*, 577 F.3d 455, 462 (2d Cir. 2009). Even after having made a timely motion for a judgment of acquittal, "a defendant who challenges the sufficiency of the evidence still bears a heavy burden. 'We must credit every inference that the jury may have drawn in favor of the government[.] . . . The jury's verdict must be sustained[] if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Finley*, 245 F.3d 199, 202-03 (2d Cir. 2001) (quoting *United States v. Gore*, 154 F.3d 34, 40 (2d Cir. 1998)). "Assessments of witness credibility and choices between competing inferences lie solely within the province of the jury." *United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010).

Yakovlev first argues that the evidence did not support the jury's conclusion that he conspired with others when he used Michael Klein's identity to defraud a bank in violation of 18 U.S.C. §§ 1344 & 1349. "To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; that he knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and that an overt act in furtherance of the conspiracy was committed." *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008) (quoting *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999)). Yakovlev argues that the Government failed to prove that he and another agreed to commit bank fraud because Yakovlev's principal associate, who opened the fraudulent bank account, "never believed he committed a crime." Appellant's Br. at 35. Nonetheless, Yakovlev's associate testified at trial that he "didn't think [his conduct] was legal and proper." Gov.'s App'x at 117; *see also id.* at 118 (admitting that he questioned whether he was doing wrong when he learned

3

from Yakovlev "that a check for over $300,000 was deposited into an ATM"). The jury was free to credit this testimony and to disbelieve the inconsistent statements on which Yakovlev relies. *See United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) ("Where there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." (quoting *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011))). Accordingly, we affirm the conviction as it relates to Michael Klein.

Next, Yakovlev argues that the evidence at trial did not support the jury's conclusion that he murdered Viktor Alexeyev. Of course, the Government was not required to prove that Yakovlev murdered Alexeyev, but rather that Yakovlev committed aggravated identity fraud "in connection with" Alexeyev's murder. 18 U.S.C. § 1028(b)(3)(B). In any event, the evidence amply supported such a conclusion. Alexeyev was last seen with Yakovlev. Alexeyev then disappeared, failing to collect rent from a tenant, to attend his friend's birthday celebration, and to show up for his scheduled flight to Moscow. After Alexeyev's disappearance, Yakovlev obtained many of his personal possessions, including his birth certificate and his credit cards. Yakovlev also began spending Alexeyev's money. Moreover, officers found Alexeyev's remains near where they found Michael Klein's abandoned and unclaimed car, despite the absence of any established connection between the two other than Yakovlev. An autopsy of Alexeyev's remains indicated that someone with medical training had dismembered his corpse, and Yakovlev had worked as a surgeon in Russia. Finally, and most damningly, Yakovlev stopped using Alexeyev's credit and ATM cards the day after the discovery of the remains, but months before their identification as Alexeyev's, suggesting that he knew the remains' origins. This evidence permitted the jury to conclude beyond a reasonable doubt that Yakovlev had murdered Alexeyev.

4

Yakovlev similarly objects to the jury's conclusion that he murdered Irina Malezhik. As noted above, the Government was not required to prove this. But the evidence again suffices. Malezhik disappeared after entering Yakovlev's car. The day of her disappearance, four checks belonging to her were deposited into Yakovlev's bank account. Over the nine day period following Malezhik's disappearance, Yakovlev and his wife made charges worth $35,500 to Malezhik's bank accounts and credit cards. In one transaction, Yakovlev's wife presented Malezhik's Social Security card as a means of identification. Finally, when FBI agents searched Yakovlev's basement, they discovered a pair of women's underwear. DNA analysis revealed that the underwear belonged to Malezhik. Given this evidence, the jury could have reasonably concluded that Yakovlev felt free to plunder Malezhik's resources only because he had ensured that she would never complain.

Next, Yakovlev argues that the district court erred by admitting certain evidence. First, he argues that the district court should have suppressed Malezhik's underwear, which FBI agents recovered from his basement. "On an appeal from a district court's ruling on a motion to suppress evidence, we review the court's factual findings for clear error, viewing the evidence in the light most favorable to the government. The district court's legal conclusions are reviewed *de novo*." *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009). The Fourth Amendment requires that officers demonstrate "probable cause" in order to obtain a warrant, and it further demands that warrants "particularly describ[e] . . . the persons or things to be seized." U.S. CONST. amend. IV. "[I]f something is not described in the warrant, it cannot be seized." *United States v. Dzialak*, 441 F.2d 212, 216 (2d Cir. 1971). Here, agents obtained a warrant that permitted them to search Yakovlev's basement for "human remains."

Yakovlev argues that agents did not show the requisite "probable cause" before obtaining the warrant and that the warrant did not describe the underwear that the agents seized. The warrant, however, was supported by probable cause. The financial evidence described above made Yakovlev a suspect in Malezhik's disappearance. Moreover, agents presented testimony from a confidential informant who reported smelling a "strong, foul odor emanating" from Yakovlev's basement. App'x at 78. This testimony, combined with the financial evidence, indicated that Yakovlev had potentially buried Malezhik in his basement. *See Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."). Moreover, the underwear, which agents discovered in an area that had neither occupants nor laundry facilities, fell within the scope of the warrant. Human remains include hairs, tissues, and even cells invisible to the human eye. Underwear, because of its proximity to the body, is likely to contain such remains. *See United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990) ("[T]he Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether [particular evidence] falls within the described category."). Thus, the warrant issued based on probable cause, and it reasonably described the underwear that the agents seized.

Finally, Yakovlev argues that the district court erred when it permitted expert testimony concerning similarities in the DNA sequences of two different dog hairs. We conclude, however, that any error in the admission of this testimony was harmless. An error in the admission of evidence does not require reversal "if there is fair assurance that the jury's judgment was not substantially swayed by the error." *United States v. Estrada*, 430 F.3d 606, 622 (2d Cir. 2005) (quoting *United States v. Yousef*, 327 F.3d 56, 121 (2d Cir. 2003)) (internal quotation marks omitted). Here, the challenged testimony purported to connect a dog hair found on Alexeyev's

6

remains to another recovered from Yakovlev's car. Nonetheless, as described above, the Government presented an overwhelming amount of evidence that tied Yakovlev to Alexeyev's disappearance and murder. Given the wealth of evidence, there is "fair assurance" that, even in the absence of the challenged testimony, the jury would nonetheless have convicted. *See id.* at 622-23 (deeming error harmless where "the Government's case was strong enough to support a conviction even apart from the witness' testimony" (quoting *United States v. Burston*, 159 F.3d 1328, 1336 (11th Cir. 1998)). Accordingly, we affirm.

We have considered Yakovlev's remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK