Associate Chief Justice LEE,
dissenting:
148 Plaintiffs' medical malpractice claim alleged negligence by Dr. Paul Taylor in his *1240 prescription of an unreasonable dose of methadone leading to the death of Brad Robinson. In support of this claim, plaintiffs presented expert testimony challenging the reasonableness of the dosage on Taylor's written prescription.
1 44 Taylor offered two responses. First, Taylor proffered his own testimony (through a deposition transcript) that he had given special dosing instructions to Robinson-instructions that directed Robinson to take less than the prescribed amount initially, and to go up to the prescribed dosage only if the lower dosage was insufficient. At trial, Taylor asserted that this ameliorated any alleged negligence in the written prescription, in that the oral instructions were reasonable and that Robinson was at fault for failing to follow the oral instructions. Second, Taylor presented expert testimony (from Dr. Long) supporting the reasonableness of the methadone dosage on the written prescription. Dr. Long's testimony indicated that although the methadone dosage was unusual, it was necessary (and reasonable) for this patient given his high level of tolerance for pain medication.
45 Plaintiffs, in turn, challenged Taylor's assertions regarding the oral dosing instructions. They first alleged that no such instructions were given-noting that Taylor's testimony was the only evidence of such instructions, and questioning his credibility in light of his prior felony conviction (among other things). As a fallback, plaintiffs also asserted that even the alleged oral dosing instructions were unreasonable.
46 The jury entered a verdict in favor of the plaintiffs. It found that Taylor had breached the standard of care and that his breach was the cause of Robinson's death. And it awarded the Robinsons $3 million in general damages. The verdict gave no indication of the specific basis of the jury's determination of negligence, however. Thus, there is no way to determine whether the jury accepted or rejected Taylor's assertion that he gave oral dosing instructions, or whether it reached the question of whether the oral dosing instructions were unreasonable.
{47 The majority reverses and remands for a new trial. -It does so on the basis of its determination of error in the admission of evidence of a prior eriminal conviction of Taylor, which was admitted for the purpose of allowing the plaintiffs to challenge his credibility. See supra 128. I agree with the court's analysis under rules 608(b) and 609(a)(2). The prior conviction was not properly admissible under either of these rules, for reasons articulated by the court.
148 I respectfully dissent, however, because I disagree with the court's analysis and holding under rule 609(a)(1)(A). I would affirm the district court's admission of Taylor's prior conviction under the abuse of discretion standard under this rule.
{49 The majority deems Taylor's conviction for distribution of a controlled substance "minimally probative." Supra T 80. It bases that conclusion on the determination that Taylor's testimony about oral dosing instructions was somehow "inconsequential to the case." Supra 129. And in light of the purportedly "tangential" nature of Taylor's testimony, the majority concludes that "there was no real need to impeach Dr. Taylor's eredibility," and thus no basis for assigning any significant probative value to Taylor's convietion. Supra T 29.
T 50 In sum, the majority's reasoning is as follows: (1) Taylor's dosing instructions were inconsequential to the jury's finding of negli-genee; (2) the injection of Taylor's eriminal conviction into the trial was thus minimally probative; and (8) because the danger of unfair prejudice substantially outweighed the minimal probative value of the criminal con-viection information, it should not have been introduced to the jury.
{51 I find this analysis troubling-both legally and factually. As a legal matter, the probative value of a prior conviction turns on the impact of the conviction on the witness's credibility, not on the relative significance of the issue on which the witness is testifying.[1] *1241 The significance of the issue should matter, if at all, in the assessment of the unfairness of any prejudice, or of the harmlessness of any error. By adding this consideration to the probative value calculus, the majority loads one side of the seale before even getting to any balancing. This conflates minimal significance with minimal probative value.
152 I would start with a straightforward analysis of the impact of Taylor's prior conviction on his credibility as a witress. And I would find the probative value of the convietion in question to be substantial-or at least arguably so, which is all it should take under the abuse of discretion standard of review. The conviction, for starters, was on a felony. See supra 1 28 (acknowledging that "any felony conviction is 'at least somewhat probative of a witness's propensity to testify truthfully'" (quoting United States v. Estrada, 430 F.3d 606, 617 (2d Cir.2005))). This felony, moreover, seems to me to call Taylor's credibility into question quite directly.[2] A conviction for distribution of a controlled substance may not so indicate on its face, as the elements of the offense do not generally require proof of a "dishonest act or false statement." Suproe 126. But when a doctor pleads guilty to selling an oxycodone pre-seription in a parking lot, there is a strong inference that he was providing the prescription under false (or at least questionable) pretenses. At a minimum, the district court would not be abusing its discretion in so concluding, which is all that is needed here.[3]
[ 58 That suggests that Taylor's conviction was substantially probative of his lack of credibility. I would so conclude. I would also hold, under the abuse of discretion standard of review, that the probative value of the prior conviction was not "substantially outweighed by a danger of ... unfair prejudice." Uras R. Evip. 403.
1 54 I agree, certainly, that the "narrative of Dr. Taylor selling oxycodone in a parking lot" likely evoked a powerful negative view of the doctor. Supra 134. And the majority is right that opening the door to this prior conviction introduced a possibility that the jury could make improper-and unfairly prejudicial-inferences (eg., "that Dr. Taylor is a bad doctor because he is a bad person"). Id. But we cannot assume that this unfair prejudice would predominate over the proper function of the evidence (of undermining Taylor's credibility). After all, the jury was instructed to consider the prior conviction only in judging Taylor's credibility.[4] And if the mere existence of other, unfair inferences were enough to outweigh the probative value of a prior conviction, no such evidence would ever be admitted. That cannot be what our rules envision.[5]
T55 If the majority were right that the question of Taylor's credibility in allegedly giving oral dosing instructions was an incon *1242 sequential matter at trial, see supra 129, then the risk of unfair prejudice could possibly be seen as substantially outweighing the probative value of the prior conviction evidence. But the court's assessment of the significance of Taylor's credibility cannot be reconciled with the trial record.
156 As noted, Taylor's alleged oral dosing instructions were a central part of his defense. And the trial transcript contradicts the majority's characterization of Taylor's credibility as "tangential." Supra 129. It's true that "the Robinsons argued that Taylor was negligent regardless of which dosing instructions were given," and that their expert "opined that Mr. Robinson likely followed" any oral dosing instructions. Supra But the court's characterization of the trial record is incomplete. Throughout the trial, plaintiffs challenged the very existence of any oral doging instructions. And they openly invited the jury to reject Taylor's testimony of such instructions by challenging his credibility.
€57 This was particularly clear during closing argument. Plaintiffs' counsel's argument was focused on questioning the existence of oral dosing instructions and on questioning the credibility of Taylor's testimony:
Now, if during deliberations somebody says, "Well, but there are special dosing instructions," remind them of these things: There is no evidence of special dosing instructions.
Okay.
If there were special dosing instructions, they are inconsistent with every other piece of evidence we have. Inconsistent with the written-handwritten note by Dr. Taylor on May 26. It's inconsistent with the typed out note for the 26th. - It's inconsistent with the prescription itself, and it's in prescription (gic) with the verification, the confirmation of the dose, provided by Dr. Taylor's office to Mr. Carlson. It's not consistent with anything
[[Image here]]
The only evidence is Dr. Taylor's own word[;]. ... as the judge instructed, you've got to consider the credibility of each witness. Dr. Taylor is a convicted felon, convicted of unlawfully selling prescriptions for oxycodone in parking lots. credible. He is not He is the only witness who's claimed these instructions, instructions that aren't consistent with any piece of written evidence we have.
"[ 58 The question of special dosing instrue-tions was a key question at trial, Taylor voluntarily injected this issue into the case. He did so as a backup for his threshold assertion (via his expert, Dr. Long) that the written prescription was reasonable. And the plaintiffs, predictably and as was their right, seized upon the opportunity to challenge Taylor's credibility. In so doing, they openly invited the jury to reject Taylor's assertion that he gave oral dosing instructions on the basis of doubts about his eredi-bility. For all we know the jury did exactly that. On this record it is a fair inference that Taylor's credibility was a key question for the jury.
1 59 In these cireumstances, I have no idea how the majority can say that Taylor's eredi-bility was tangential, or that the "jury's determination of negligence did not turn on" the question whether Taylor gave oral dosing instructions. Supro 930. That is sheer speculation. The most we can say is that the jury might not have found it necessary to decide whether Taylor "was telling the truth about the oral dosing instructions," supra €29, given that the plaintiffs alleged negligence even under those instructions. That was a fallback for the plaintiffs, however, as they directly challenged the existence of oral dosing instructions and directly challenged Taylor's credibility in asserting that he gave them. And for me that suggests that Taylor's credibility was a key issue-one voluntarily injected into the case by Taylor, and challenged directly by the plaintiffs.
'I 60 Because Taylor's credibility was a key issue; I see no- way to presume that the jury misused probative evidence of credibility to draw unfair inferences against him. I would accordingly affirm. That result seems particularly appropriate under the abuse of discretion standard of review. Under this standard the district court's decision may be upheld even if we decide that we might have excluded Taylor's prior conviction if we had been presiding over the trial. It should be enough that a reasonable trial judge could find that the probative value of the conviction *1243 is not substantially outweighed by the risk of unfair prejudice.[6] I would affirm on that basis.

. See, eg., State v. Gomez, 2002 UT 120, ¶ 34, 63 P.3d 72 ("The trial court must ... evaluate and consider the probative value of the proffered testimony, that is, the extent to which the proposed testimony is probative of truthfulness or untruthfuiness. ..."); State v. Emmeft, 839 P.2d 781, 785-86 (Utah 1992) ("it is well established *1241 that under Utah Rules of Evidence 404 and 609, past criminal convictions are only admissible for the limited purpose of attacking the credibility of a defendant...."); see also Buack'S Law Dicto-Nary 1397 (10th ed.2014) (defining probative as "{tlending to prove or disprove").

. "Rule 609(a)(1) crimes, which do not bear directly on honesty such as to be automatically admissible under rule 609(a)(2), may nonetheless be highly probative of credibility." United States v. Estrada, 430 F.3d 606, 617 (2d Cir.2005). "[MJany [Rule 609(a)(1) felonies] are significantly probative of a witness's propensity for truthfulness." Id.; see also United States v. Burston, 159 F.3d 1328, 1335 (11th Cir.1998) ("'The implicit assumption of Rule 609 is that prior felony convictions have probative value.").

. See also Burston, 159 F.3d at 1335 ("We are not certain what evidence of two convictions for theft by taking, one conviction for armed robbery, and one conviction for aggravated assault says about [the witness'] credibility, but we are certain that the jury should have been given the opportunity to make that decision.").

. "We. should presume that the jury followed these instructions,. Our case law, in fact, prescribes [such] a presumption...." Wilson v. IHC Hosps., Inc., 2012 UT 43 ¶ 142, 289 P.3d 369 (Lee, J., dissenting) (relying on State v. Harmon, 956 P.2d 262, 273 (Utah 1998)).

. The majority is concerned that "(allthough many types of evidence pose a risk of unfair prejudice, conviction evidence, in particular, carries with it unique and inherent danger of unfair prejudice." Supra 134. But rule 403 contains no such presumption of increased risk of unfair prejudice for conviction evidence. It simply allows conviction evidence to be admitted unless its value in aiding the jury's evaluation of witness credibility is substantially outweighed by the risk of unfair prejudice. Those two adjectives are significant. If any presumption is present in our rule, it is a presumption in favor of admitting conviction evidence.

. See, e.g., Barrientos ex rel. Nelson v. Jones, 2012 UT 33, ¶ 39, 282 P.3d 50 ("[Wle grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion, and then only if the ruling was beyond the limits of reasonability." (alteration in original) (internal quotation marks omitted)).